## PRUDENTIAL ASSUR. CO. v. ÆTNA LIFE INS. CO.

### (Circuit Court, D. Connecticut. April 14, 1885.)

**LIFE INSURANCE—REINSURANCE—ORAL PROMISSORY REPRESENTATION.**

The failure of an insurance company that procures reinsurance to comply with an oral promissory representation in regard to its future conduct, made without fraud or falsehood, before the policy was issued, and not alluded to therein, is not a valid defense against the insurer's liability upon the policy.

At Law.

*E. C. Henderson,* for plaintiff.

*Charles J. Cole,* for defendant.

SHIPMAN, J. This is a demurrer to the second defense in the defendant's answer to the plaintiff's complaint upon a policy of life insurance. The facts admitted to be true, for the purposes of pleading, are as follows: In the year 1854, the National Loan Fund Life Assurance Society, which in the year 1839 had issued to Edward Lawson its policy of insurance upon his life for £3,000, applied to the defendant to reinsure $5,000 of said risk, which was still outstanding. On making said application, the society represented to the defendant, in order to induce it to issue a policy of reinsurance for said sum, that the risk was a good one,—a most excellent risk,—and they were willing rather to keep $10,000 at risk on the life than buy the policy; and thereupon, upon the faith and credit of the representation that the society would keep $10,000 at risk on said life rather than buy the policy, the defendant issued to said society a policy of reinsurance on Lawson's life for the term of seven years. In the year 1861, on the expiration of this term, the society, the name of which had been changed to the International Life Assurance Society, desired to renew said policy for the term of life. The defendant required a new medical examination of Lawson, so as to show his physical condition at that time, and, the same being furnished, upon the faith and credit thereof and of the previous representations made at the time of issuing the original reinsurance policy, the policy in suit was issued.

In the year 1866 the society reinsured £500 of its said risk in the Royal Insurance Company of London. In the year 1869 the society ceased business and went into liquidation, and a liquidator thereof was duly appointed. On or about March 30, 1871, the society reinsured the entire risk on Lawson's life. Lawson died in May, 1879, having shortly before his death, and in the same year, surrendered to the plaintiff, for £690, the policy issued to the International Society upon his life. The plaintiff alleges that on March 30, 1871, the official liquidator of the society assigned to the plaintiff, for a valuable consideration, the defendant's policy on Lawson's life, now in suit. This is denied by the defendant. It is agreed that from March 30, 1871, until Lawson's death, the premiums on said policy were regularly paid to the defendant by the plaintiff.

It is not denied that the representations in regard to the character of the risk were true, nor is the willingness of the society, at the time of making the application, to keep $10,000 at risk denied. An interpretation of the language of the society, in regard to its willingness to keep the specified sum at risk, is that it was then willing or then wished to pursue that course. The defendant interprets the meaning to be that the society represented that it would keep $10,000 at risk rather than buy the policy. The non-performance of its representations is alleged to consist in the reinsurance of £500 in 1866, and a reinsurance of the whole risk in 1871, after it went into liquidation.

Assuming that the construction which the defendant places upon the language of the original insurer is correct, and that it promised to keep the specified sum at risk, not only through the life of the policy which the defendant issued in 1874, but during the life of all subsequent policies which it might issue on Lawson's life, and that it promised that, upon going into liquidation, no reinsurance should be effected, the question arises, is the failure of the assured to comply with an oral promissory representation in regard to its future conduct, made without fraud or falsehood, before the policy was issued, and not alluded to therein, a valid defense against the insurer's liability upon the policy?

This subject has been considered recently by the supreme court in *Insurance Co.* v. *Mowry*, 96 U. S. 544, and by the supreme court of Massachusetts in *Kimball* v. *Ætna Ins. Co.* 9 Allen, 540. The extended discussion which was given in these cases to the subject of oral promises made without fraud, prior to the written contract, precludes the necessity of any lengthy argument.

The authorities generally notice the distinction between an untrue representation of a material existing fact, which makes the contract a nullity because the minds of the parties never met and there was no agreement, and an oral promissory representation made, without fraud, before the written contract, in regard to the intention, purpose, or future conduct of the promisor. The latter class of repre-

sentations, unless incorporated in the policy, are of no importance, "because the written instrument is the expression and the only evidence of the duties, obligations, and promises to be performed by each party while the insurance continues. To make the continuance or termination of a written contract, which has once taken effect, dependent on the performance or breach of an earlier oral agreement, would be to violate a fundamental rule of evidence." *Kimball* v. *Ætna Ins. Co.* 9 Allen, 540. Mr. Justice GRAY, who delivered the opinion in this case, further says:

"But an oral representation as to a future fact, honestly made, can have no effect; for if it is a mere statement of an expectation, subsequent disappointment will not prove that it was untrue; and if it is a promise that a certain state of facts shall exist or continue during the term of the policy, it ought to be embodied in the written contract."

The insurer is at liberty to compel an observance of promises in regard to future conduct, by incorporating them into the written contract, if it regards a performance as important, but the promise, unless embodied in the contract, is not a part of it. All things to be done by one or the other during the continuance of the written agreement, upon the doing of which the life of the contract depends, must appear in the agreement. *Alston* v. *Mechanics' Ins. Co.* 4 Hill, 329; *Mayor of N. Y.* v. *Brooklyn Ins. Co.* *43 N. Y. 467; *Bryant* v. *Ocean Ins. Co.* 22 Pick. 200; *Insurance Co.* v. *Mowry*, 96 U. S. 544.

The case of *Traill* v. *Baring*, 10 Jur. (N. S.) 377, and 3 Bigelow, Ins. Cas. 233, is not inharmonious with the authorities that have been cited. The facts of that case as stated in the syllabus in Bigelow's Cases are as follows:

"Insurance company A., (having previously granted a policy of reinsurance to insurance company B., on the life of L. I., for £3,000,) on the tenth of May, 1861, offered to insurance company C. £1,000 of the risk, stating that insurance company D. had agreed to undertake £1,000, and that they (company A.) would retain £1,000. Company C. accepted the proposal without the usual investigation or inquiries into the age, health, or habits of the insured, as a partnership risk. The policy granted by company C. was dated and the premium was paid on the eighteenth May, 1861. Company D., on the fifteenth May, 1861, came to a resolution not to, and they did not in fact, retain any portion of the risk, but this resolution and the course of action upon it was not communicated to company C. In 1862 the insured died of the heart disease. Held, that the policy granted by company C. was void and must be delivered up to be canceled."

The gist of the case, as shown in the opinion of the vice chancellor and of the judges upon appeal, was that when the contract was perfected the representation which had been made was not true, and that the change of intention which took place before the contract was entered into, should have been communicated to the other contracting party. The circumstances bring the case within the principle that an untrue representation of a material, and then existing, independent or collateral, fact, affecting the risk, vitiates the policy.

I have not thought it necessary to consider whether, upon a fair

construction of the representations made in 1854, the policy in suit, which was issued in 1861, was properly affected by them, or whether there was any breach of the promise.

The demurrer is sustained.